**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

ORUM & ROTH LLC

                                              )

                  Plaintiff,      )     Case No.

                                                )

        v.                        )

                                                )

STAGES MUSIC HALL, INC. and    )
OPT-IT, INC.                      )

                                              )     **Jury Trial Demanded**

                                              )

                Defendant.   )
------------------------------------------------------------x

## CLASS ACTION COMPLAINT

Now comes the Plaintiff, Orum & Roth LLC ("Orum & Roth" or "Plaintiff"), and complaining of the Defendants, Stages Music Hall, Inc., d/b/a "Metro" ("Metro") and Opt-It, Inc. ("Opt-It"), states as follows:

### NATURE OF THE CASE

1.    Metro operates a concert venue located at 3730 North Clark Street, Chicago, IL. In an effort to promote its concerts, other events and its website, Metro engaged in a marketing campaign through unauthorized text messages sent to cellular telephones. Metro retained the company Opt-It to send mass texts advertising Metro in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") and the Illinois Consumer Fraud Act, 815 ILCS 505/2 *et seq.* ("ICFA").

### PARTIES

2.    Plaintiff, Orum & Roth, is an Illinois limited liability company.

3.      Defendant, Metro, is an Illinois corporation with its principal place of business in Chicago, IL.

4.      Defendant, Opt-It, is an Illinois corporation with its principal place of business in Chicago, IL.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227(a) (TCPA). This Court has supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367.

6.      Venue is proper in this district under 28 U.S.C. § 1391 (b)(1).

## FACTS RELATING TO DEFENDANTS

7.      Metro and Opt-It have engaged in a marketing campaign using Short Message Service. The term "Short Message Service" or "SMS" describes a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 160 characters.  An "SMS message" is a text message call directed to a wireless device through the use of the telephone number assigned to the device.

8.      Beginning in November 2010 and continuing to the present, Defendants intentionally caused mass transmissions of wireless spam to the cell phones of what it hoped were potential customers of Metro.  Plaintiff owns a phone number for a cellular phone to which the Defendant sent over 70 unauthorized text messages beginning in November 2010 and continuing to the present, despite being requested to stop sending the unauthorized text

messages. A copy of those text messages, otherwise known as "wireless spam", are attached hereto as Exhibit "A". Those unauthorized text messages advertised concerts, other events at Metro's place of business and Metro's website. The text messages contained a link to Metro's website using "bitly", a URL shortening service. Each text message was sent from a shared short code, a 5 digit number used to send and receive SMS or text messages on cellular networks. The messages were sent using Opt-It's short code, identified in the wireless spam as "46786".

9.      On information and belief, Metro retained Opt-It to send SMS or text messages to Metro's customers and potential customers. Opt-It was at all times alleged in this action an agent of Metro and was acting under Metro's direction, control and authority, therefore subjecting Metro to vicarious liability for Opt-It's actions. Moreover, under the TCPA the entity on whose behalf the messages were sent is liable, along with the sender, for any violation of the TCPA.

10.      On information and belief, based on the fact that the Plaintiff continued to receive multiple texts advertising Metro's concerts, events and website, and based on the fact that the messages were not personalized in any manner and were sent from a mass dialing, the Defendants disseminated substantially the same text advertisement to not only the Plaintiff but also to many other individuals and entities that did not have a prior relationship with Metro.

11.      Plaintiff did not have a prior business or other relationship with Metro, and has not authorized Metro to send advertisements to it by text message.

12.      On information and belief, many of the individuals and entities who received Metro's text messages did not give prior express invitation or permission to receive Metro's text messages.

13.     There are no reasonable means for Plaintiff or other recipients of Defendants'

unauthorized text messages to avoid receiving the illegal texts.  Cellular phones receive text

messages even when the phones are turned off.

## COUNT I

### (Violation of the TCPA, 47 U.S.C. § 227, On Behalf Of The Class)

14.     Plaintiff reasserts and realleges the allegations contained in paragraphs 1 to 13, as and for

the allegations of paragraph 14, as if fully set forth herein.

15.     Defendants made unsolicited commercial text calls to the wireless telephone numbers of

Plaintiff and the other members of the class using equipment that, upon information and belief,

had the capacity to store or produce telephone numbers to be called, using a random or

sequential number generator.

16.     These text calls were made without the prior express consent of Plaintiff or the class.

17.     Defendants have, therefore, violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), which

makes it "unlawful for any person within the United States...to make any call (other than a call

made for emergency purposes or made with the prior express consent of the called party) using

any automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone

number assigned to a … cellular telephone service" As a result of Defendants' illegal conduct,

the Plaintiff and members of the class suffered actual damages and, under section 227(b)(3)(B),

are each entitled to, *inter alia*, a minimum of $500.00 in damages for each such violation

(unauthorized text) of the TCPA.

18.     Defendants' misconduct was, on information and belief, willful and knowing, and therefore the Court should, pursuant to section 227(b)(3)(C) of the Act, treble the amount of statutory damages recoverable by the Plaintiff and the Class.

19.     Unless enjoined from doing so, Defendants are likely to commit similar violations in the future as is evidenced by the indiscriminate nature of the unauthorized texts.

## TCPA CLASS ALLEGATIONS

20.     Plaintiff brings this claim pursuant to Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of itself and a class consisting of (a) all persons (b) who, on or after a date four years prior to the filing of this action (28 U.S.C. § 1658) and on or before a date 20 days following the filing of this action, (c) were sent texts by or on behalf of the Defendants promoting Metro's goods or services (d) and who did not expressly consent to the receipt of the text messages.

21.     Upon information and belief, there are over 500 members of the Class, such that joinder of all members is impracticable.

22.     Common questions of law and fact exist as to all members of the Class and such questions predominate over questions affecting Plaintiff or individual Class members. Common questions for the class include:

    (a)     Whether the wireless spam Defendants distributed violates the TCPA; and

    (b)     Whether the Class members are entitled to treble damages based on the willfulness of Defendants' conduct.

23.     Plaintiff will fairly and adequately protect the interests of the Class, its claims are typical of the claims of the members of the Class, and Plaintiff's counsel is competent and experienced in federal court and class action litigation.

24.     A class action is superior to other available methods for fairly and efficiently adjudicating this controversy because, among other things, (a) joinder of all members of the respective Class is impracticable, and (b) many members of the Class cannot vindicate their rights by individual suits because their damages are small relative to the burden and expense of litigating individual actions.

25.     Defendants have acted on grounds generally applicable to the class, thereby making relief appropriate with respect to the class as a whole. Prosecution of separate actions by individual members of the class, should they realize their rights have been violated, would likely create the risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct.

26.     Numerous courts have certified class actions under the TCPA. *See e.g., Hinman v. M & M Rental Center Inc.*, 545 F. Supp. 2d 802 (N.D. Ill. 2008); *Brill v. Countrywide Home Loans, Inc.*, 05 C 2713 (N.D. Ill. June 28, 2006); *Overlord v. Wheaton-Winfield Dental Association, Ltd.*, 04 CH 01613, (Ill. Cir. Cook County); *Whiting v SunGard*, 03 CH 21135,(Ill. Cir. Cook County); *Whiting v. Goldenindustry*, 03 CH 21136 (Ill. Cir. Cook County); *Nicholson v. Hooters of Augusta, Inc.*, 245 Ga.App. 363, 537 S.E.2d 468 (2000) (private class action); *ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc.*, 203 Ariz. (App.) 94, 50 P.3d 844 (2002) (same); *Core Funding Group, LLC v. Young*, 792 N.E.2d 547 (Ind. App. 2003) (same); *Dubsky v. Advanced Cellular Communications, Inc.*, 2003 CV 652, 2004 WL 503757 (Ohio C.P. Feb.

24, 2004); *Biggerstaff v. Ramada Inn and Coliseum*, 98-CP-10-004722, (S.C. C.P., Feb. 3, 2000)

(same); *Biggerstaff v. Marriott International, Inc.*, 99-CP-10-001366 (S.C. C.P., Feb 20, 2000)

(same); *Chaudhry v. Bonneville International Corp., d/b/a KDGE/KZPS*, (Dist. Ct. Tex., March

10, 1997)(same); *Coontz v. Nextel Communications*, No. C- 200100349 (Dist. Ct. Tex.)(same);

*Gold Seal v. PrimeTV*, No. 49C01-0112 -CP-3010 (Marion County, Indiana, August 29,

2002)(same); *Jemiola v. XYZ Corp.*, No. 411237 (C.P. Ohio, Dec. 21, 2001)(same); *Salpietro v.*

*Resort Exchange International*, No. GD00- 9071 (Allegheny Co. C.P.)(same); *WPS, Inc. v. Lobel*

*Financial, Inc.*, No 01CP402029 (C.P. S.C., Oct. 15, 2001) (same); *State of Texas v. American*

*Blast Fax, Inc.*, 164 F. Supp. 2d 892 (W.D.Tex. 2001) (state enforcement action) *Gans v.*

*Seventeen Motors, Inc.*, No. 01-L-478 (Ill. Cir., St.Clair County, Sept. 19, 2002).

27.     A class action is an appropriate means of adjudicating this dispute, in that:

> A.     Most consumers or entities are probably unaware of the
>         violation.
> B.     Individual actions are not economically feasible.
> C.     Judicial economy is best served by a class action.

WHEREFORE, Plaintiff requests the following relief in favor of Plaintiff and the class

and against the Defendants:

> a.     An order certifying the class as defined above
> b.     Actual damages;
> c.     Statutory damages;
> d.     Enhanced statutory damages for Defendants' willful conduct;
> e.     An injunction against the further transmission of unsolicited text advertising;
> f.     Attorney's fees and costs; and
> g.     Such other or further relief as the Court deems just and proper.

## COUNT II

### (Violation of the ICFA, 815 ILCS 505/2 *et seq*., On Behalf Of The Class)

28.　　Plaintiff reasserts and realleges the allegations contained in paragraphs 1 to 19, as and for the allegations of paragraph 28, as if fully set forth herein.

29.　　Defendants have engaged in unfair and deceptive acts and practices, in violation of the Illinois Consumer Fraud Act, ICFA § 2, 815 ILCS 505/2 *et seq.*, by sending unsolicited text messages to Plaintiff and others.

30.　　Plaintiff and each class member suffered damages as a result of receipt of the unsolicited text messages. These damages include the costs to receive the text messages and/or the dilution of the number or texts that a class member may be able to use under a particular call plan, and damages for an invasion of the Plaintiff and class members' privacy and being forced to incur a nuisance.

31.　　Defendants engaged in such conduct in the course of trade and commerce.

32.　　Defendants engaged in such conduct knowing that it was causing recipients damage.

33.　　Defendants' illegal conduct gave Defendants an unfair competitive advantage over businesses that advertise lawfully, such as by direct mail, authorized fax transmission, authorized telephone solicitation, etc.

34.　　In addition, Defendants' conduct was contrary to public policy, as established by the TCPA and case law.

35.     On information and belief, Defendants knowingly and deliberately engaged in unlawful acts.

36.     Unless enjoined from doing so, Defendants are likely to commit similar violations in the future.

## ICFA CLASS ALLEGATIONS

37.     Plaintiff brings this claim pursuant to Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of itself and a class consisting of (a) all persons (b) who, on or after a date three years prior to the filing of this action and on or before a date 20 days following the filing of this action, (c) were sent texts by or on behalf of the Defendants promoting Metro's goods or services (d) and who did not expressly consent to the receipt of the texts messages.

38.     Upon information and belief, there are over 500 members of the Class, such that

joinder of all members is impracticable.

39.     Common questions of law and fact exist as to all members of the Class and such

questions predominate over questions affecting Plaintiff or individual Class members. Common

questions for the Class include:

    (a)     Whether the wireless spam Defendants distributed violates the TCPA;

    (b)     Whether the Class members are entitled to treble damages based on the
            willfulness of Defendants' conduct;

9

(c)    Whether the conduct described above violates the Class' right to privacy and constitute a nuisance; and

(d)    Whether the Defendants' conduct constitutes a violation of the IFCA.

40.    Plaintiff will fairly and adequately protect the interests of the Class, its claims are typical of the members of the Class, and Plaintiff's counsel is competent and experienced in federal court and class action litigation.  In the alternative, Plaintiff reserves the right to substitute an alternative class representative(s) after discovery of potential class members.

41.    A class action is superior to other available methods for fairly and efficiently adjudicating this controversy because, among other things, (a) joinder of all members of the respective Class is impracticable, and (b) many members of the Class cannot vindicate their rights by individual suits because their damages are small relative to the burden and expense of litigating individual actions.

42.    Defendants have acted on grounds generally applicable to the class, thereby making relief appropriate with respect to the class as a whole. Prosecution of separate actions by individual members of the class, should they realize their rights have been violated, would likely create the risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct.

43.    A class action is an appropriate means of adjudicating this dispute, in that:

    A.    Most consumers or entities are probably unaware of the violation.

    B.    Individual actions are not economically feasible.

    C.    Judicial economy is best served by a class action.

WHEREFORE, Plaintiff requests the following relief in favor of the Plaintiff and the class and against the Defendants:

a.      An order certifying the Class as defined above;

b.      An award of actual and statutory damages;

c.      Enhanced damages pursuant to the IFCA;

d.      An injunction requiring Defendant to cease all wireless spam activities;

e.      An award of reasonable attorneys' fees and costs; and

f.      Such other and further relief the Court deems equitable and just.


### JURY DEMAND


Plaintiff requests trial by jury of all claims that can be so tried.


Orum & Roth, LLC, individually and
on behalf of a class of similarly
situated persons


/s/ Mark D. Roth
    Mark D. Roth


Mark D. Roth
53 West Jackson Blvd.
Suite 620
Chicago, IL 60604
312.922.6262 Ext. 240